OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

February 8, 2002

The Honorable Bruce Isaacks
Denton County Criminal District Attorney
1450 East McKinney, Suite 3100
P.O. Box 2850
Denton, Texas 76202

Opinion No. JC-0459

Re: County's and school district's obligations
vis-à-vis a juvenile justice alternative education
program, and related questions (RQ-0420-JC)

Dear Mr. Isaacks:

You ask several questions about a juvenile justice alternative education program ("JJAEP") established in your county under section 37.011 of the Education Code.[1] *See* TEX. EDUC. CODE ANN. § 37.011 (Vernon Supp. 2002); *see also id.* § 37.011(f). You specifically ask seven questions:

1) What are Denton County's obligations concerning the JJAEP?

1) What authority do the County and the Independent School Districts (ISDs) have regarding discretionary expulsion referrals to the JJAEP?

2) May the Denton County Juvenile Board (Board) contractually set criteria with the ISDs for discretionary expulsion referrals?

3) What are the ISDs' obligations in funding the building of facilities?

4) Do the current contracts with the ISDs conform to current law?

5) What is the County's obligation or exposure if the discretionary referrals exceed the capacity of the County's facility?

6) May the Juvenile Board purchase real estate or accept donations of real estate to be used as a JJAEP?

Request Letter, *supra* note 1, at 2. We begin by summarizing relevant statutes.

---

[1] Letter from Honorable Bruce Isaacks, Denton County Criminal District Attorney, and Carmen Rivera-Worley, Assistant District Attorney, to Honorable John Cornyn, Texas Attorney General (Aug. 20, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

The Denton County Juvenile Board has been established in accordance with section 152.0671 of the Human Resources Code, a special statute pertaining only to Denton County (the County). *See* TEX. HUM. RES. CODE ANN. § 152.0671 (Vernon 2001). The Board is comprised of the county judge, the district judges in Denton County, and any statutory county court judge in the County. *Id.* § 152.0671(a). The County commissioners court pays Board members an annual salary, set by the commissioners court, of at least $1,500. *See id.* § 152.0671(c).

Although a juvenile board has ties to the county commissioners court, it is subject to only limited supervision by the commissioners court. A juvenile board is largely independent of the county commissioners court. *See* Tex. Att'y Gen. Op. No. JC-0085 (1999) at 1. A juvenile board receives both state and county funds. *Id.* at 1; *see* TEX. HUM. RES. CODE ANN. §§ 141.081, .082, 152.0012, .0671(c) (Vernon 2001); Tex. Att'y Gen. Op. No. JC-0209 (2000) at 2. A county commissioners court in preparing the county budget must determine the amount of county funds that it will allot to the juvenile probation department in the upcoming fiscal year and may review, to a limited extent, the board's budget. *See* TEX. LOC. GOV'T CODE ANN. §§ 111.094, 140.004 (Vernon 1999); Tex. Att'y Gen. Op. No. JC-0209 (2000) at 3. "The commissioners court may decide the dollar amount it will give the [juvenile] board" and may review that portion of the juvenile board's budget that is paid out of county funds using an abuse-of-discretion standard, but it may not review any portion of the budget that is paid with state funds. Tex. Att'y Gen. Op. No. JC-0085 (1999) at 2; *see* TEX. HUM. RES. CODE ANN. § 152.0012 (Vernon 2001); TEX. LOC. GOV'T CODE ANN. § 111.094 (Vernon 1999). A county commissioners court has no general supervisory authority over the juvenile board. *See* Tex. Att'y Gen. Op. No. JC-0085 (1999) at 3. A juvenile board may enter a contract without the commissioners court's approval. *See* Tex. Att'y Gen. Op. Nos. JC-0209 (2000) at 2, DM-460 (1997) at 6.

The juvenile board of a county with a population greater than 125,000, such as yours, must develop a JJAEP "subject to the approval of the Texas Juvenile Probation Commission." TEX. EDUC. CODE ANN. § 37.011(a) (Vernon Supp. 2002); 1 BUREAU OF THE CENSUS, U.S. DEP'T OF COMMERCE, 1990 CENSUS OF POPULATION, General Population Characteristics: Texas 2 (1992) (Denton County population is 273,525) (432,976 according to 2000 census, *available at* http://www.census.gov/). A student who has committed a serious offense that requires expulsion under section 37.007(a), (d), or (e) of the Education Code, such as possessing a weapon or committing aggravated assault, will be ordered to attend a JJAEP. *See* TEX. EDUC. CODE ANN. § 37.007(a), (d), (e) (Vernon Supp. 2002). Other offenses, such as violating the school district's code of conduct or possessing illegal drugs, do not require expulsion, although section 37.007(b), (c), (d), or (f) of the Education Code authorizes it. *See id.* §§ 37.001, .006, .007(b), (c), (d), (f) (Vernon Supp. 2002). These are the "discretionary expulsions" to which your questions refer. *See* Request Letter, *supra* note 1, at 2.

Section 37.011 envisions that a JJAEP will require a juvenile board and the school district or districts within the county to interact:

> (e) A juvenile justice alternative education program may be provided in a facility owned by a school district. A school district

may provide personnel and services for a juvenile justice alternative education program under a contract with the juvenile board.

. . . .

(j) In relation to the development and operation of a juvenile justice alternative education program, a juvenile board and a county and a commissioners court are immune from liability to the same extent as a school district, and the juvenile board's or county's professional employees and volunteers are immune from liability to the same extent as a school district's professional employees and volunteers.

(k) Each school district in a county with a population greater than 125,000 and the county juvenile board shall annually enter into a joint memorandum of understanding that:

(1) outlines the responsibilities of the juvenile board concerning the establishment and operation of a juvenile justice alternative education program under this section;

(2) defines the amount and conditions on payments from the school district to the juvenile board for students of the school district served in the juvenile justice alternative education program whose placement was not made on the basis of an expulsion under Section 37.007(a), (d), or (e);

(3) identifies those categories of conduct that the school district has defined in its student code of conduct as constituting serious or persistent misbehavior for which a student may be placed in the juvenile justice alternative education program;

(4) identifies and requires a timely placement and specifies a term of placement for expelled students for whom the school district has received a notice under Section 52.041(d), Family Code;

(5) establishes services for the transitioning of expelled students to the school district prior to the completion of the student's placement in the juvenile justice alternative education program;

(6) establishes a plan that provides transportation services for students placed in the juvenile justice alternative education program;

(7) establishes the circumstances and conditions under which a juvenile may be allowed to remain in the juvenile justice alternative education program setting once the juvenile is no longer under juvenile court jurisdiction; and

(8) establishes a plan to address special education services required by law.

(*l*) The school district shall be responsible for providing an immediate educational program to students who engage in behavior resulting in expulsion under Section 37.007(b), (c), and (f) but who ·are not eligible for admission into the juvenile justice alternative education program in accordance with the memorandum of understanding required under this section. . . . The memorandum of understanding shall address the circumstances under which such students who continue to engage in serious or persistent misbehavior shall be admitted into the juvenile justice alternative education program.

(m) Each school district in a county with a population greater than 125,000 and the county juvenile board shall adopt a joint memorandum of understanding as required by this section not later than September 1 of each school year.

. . . .

(*o*) In relation to the development and operation of a juvenile justice alternative education program, a juvenile board and a county and a commissioners court are immune from liability to the same extent as a school district, and the juvenile board's or county's employees and volunteers are immune from liability to the same extent as a school district's employees and volunteers.

TEX. EDUC. CODE ANN. § 37.011 (Vernon Supp. 2002). Generally, the school district in which a student is enrolled on the date the student is expelled for reasons other than a mandatory expulsion must, if the student attends the JJAEP, "provide funding to the juvenile board for the portion of the school year for which the juvenile justice alternative education program provides educational services in an amount determined by the memorandum of understanding under Section 37.011(k)(2)." *Id.* § 37.012(a).

You state that the Denton Independent School District, Denton County, and the Board entered an interlocal cooperation agreement on February 10, 1998, which has automatically renewed itself annually. *See* Request Letter, *supra* note 1, at 2. The Board and all Denton County independent school districts executed a memorandum of understanding for the 2000-2001 school year on July 26, 2000. *See id.*

We do not answer your fifth question regarding whether the Board's current contracts with the school districts "conform to current law" for two reasons. *See* Request Letter, *supra* note 1, at 2. First, you did not include copies of any of the agreements in your letter to us. Second, in any event, reviewing contracts is not an appropriate function for the opinion process. *See* Tex. Att'y Gen. Op. No. JM-697 (1987) at 6; *see also* Tex. Att'y Gen. Op. No. DM-192 (1992) at 10. With this exception, we address your remaining questions.

Your first and sixth questions, which we answer together, concern Denton County's legal obligations vis-à-vis the Denton County JJAEP generally and, in particular, if the "discretionary referrals exceed the" JJAEP facility's capacity. *See* Request Letter, *supra* note 1, at 2. As you state, subsections (j) and (*o*) of section 37.011, by immunizing a county and a commissioners court from liability with respect to the development and operation of a JJAEP, may suggest that a county in fact has some legal obligations and liabilities. *See* TEX. EDUC. CODE ANN. § 37.011(j), (*o*) (Vernon Supp. 2002).

Outside of its responsibility to provide some funding to the juvenile board and to review that portion of the juvenile board's budget funded with county monies, however, neither a county nor a commissioners court is statutorily responsible for any aspect of the development or operation of a JJAEP. A county commissioners court may exercise only those powers that the state constitution and statutes confer upon it, either explicitly or implicitly. *See* Tex. Att'y Gen. Op. Nos. JC-0239 (2000) at 2, JC-0171 (2000) at 1. As we have stated previously, "the juvenile probation board is an independent entity whose acts are subject to very limited scrutiny by the commissioners court of the county in which it is located." Tex. Att'y Gen. Op. No. JC-0085 (1999) at 1; *see also* Tex. Att'y Gen. Op. No. JC-0209 (2000) at 2 (stating that, generally, juvenile board is entity "separate and apart" from its county and commissioners court). Moreover, the commissioners court has no authority to determine how the juvenile board is to expend its funds. *See* Tex. Att'y Gen. Op. No. JC-0085 (1999) at 2.

In our opinion, the county's only liability may correspond with its limited responsibility to provide funds to the juvenile board and to supervise the juvenile board's budget. *See also* TEX. CIV. PRAC. & REM. CODE ANN. § 102.002(a) (Vernon Supp. 2002) (authorizing county to pay actual damages awarded in negligence action against county employee who, in the course and scope of employment, injured another). The extent of a county's obligations or liabilities in any particular case depends upon the facts of the situation and must be decided by a court on a case-by-case basis. *See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0032 (1999) at 4 (stating that question of fact is beyond purview of this office), JC-0027 (1999) at 3 (stating that questions of fact cannot be addressed in attorney general opinion), JC-0020 (1999) at 2 (stating that investigation and resolution of fact questions cannot be done in opinion process).

Your second and third questions concern the allocation of authority to determine which of the discretionary expulsions under section 37.007(b), (c), (d), or (f) will result in placement in a JJAEP. First, you wish to know what authority the county and independent school districts have regarding discretionary expulsion referrals to the JJAEP. *See* Request Letter, *supra* note 1, at 2.

We do not believe a county has any authority to determine which discretionary expulsions will be subject to placement in the JJAEP. Nothing in the statute gives a county any such authority, and we find no reason to imply the authority.

On the other hand, a school district's authority stems from its duty to negotiate the required annual memorandum of understanding with the juvenile board. *See* TEX. EDUC. CODE ANN. § 37.011(k), (*l*) (Vernon Supp. 2002). In a county with a population greater than 125,000, like Denton County, each school district and the juvenile board annually must enter a "joint memorandum of understanding that . . . identifies those categories of conduct that the school district has defined in its student code of conduct as constituting serious or persistent misbehavior for which a student may be placed in the" JJAEP. *Id.* § 37.011(k)(3). The memorandum of understanding also must "address the circumstances under which . . . students [placed in the school's alternative education program] who continue to engage in serious or persistent misbehavior shall be admitted into the" JJAEP. *Id.* § 37.011(*l*). And the memorandum of understanding must specify the amount and conditions under which the school district will pay the juvenile board for each student placed in the JJAEP following a discretionary expulsion. *See id.* § 37.011(k)(2).

Conversely, to answer your third question regarding the juvenile board's authority to set criteria for discretionary expulsion referrals, the juvenile board must negotiate with the school district to determine the discretionary expulsions for which a student may be placed in the JJAEP. *See id.* § 37.011(k)(3). In this way, both the school district and the juvenile board have authority to determine discretionary expulsions that will be subject to placement in a JJAEP, but the authority of each is subject to what the other will accept in the memorandum of understanding. If the board and the district cannot agree on the offenses that qualify for placement in the JJAEP, the parties may arbitrate the dispute in accordance with section 37.011(p). *See id.* § 37.011(p).

Under the statute, the eligibility criteria set in the memorandum of understanding may be based upon classifications of misbehavior only. In your letter to this office, you state that "[a]ge, mental status, special needs or requirements might be included in . . . eligibility standards" under a memorandum of understanding. Request Letter, *supra* note 1, at 7. You believe that "the statute is totally silent in this regard." *Id.* We disagree. Section 37.011(k)(3) requires a memorandum of understanding to identify the "categories of conduct" for which a student may be placed in a JJAEP. TEX. EDUC. CODE ANN. § 37.011(k)(3) (Vernon Supp. 2002). None of the factors you list are "conduct." *See* III OXFORD ENGLISH DICTIONARY 690 sense 8.a (2d ed. 1989). Nor does the statute articulate any category of characteristics, other than conduct, for which a student may be placed in a JJAEP. Coincidentally, a brief we have received suggests that federal law and other state law prohibit discrimination on the basis of disability or qualification for services.[2] *See* 20 U.S.C. ch. 33

---

[2]*See* Letter from Mr. David A. Anderson, General Counsel, Texas Education Agency, to Honorable John

(continued...)

(1994); TEX. EDUC. CODE ANN. ch. 29, subch. A (Vernon 1996 & Supp. 2002). Moreover, a student with a disability may be placed in an alternative education program only in accordance with section 37.004 of the Education Code. *See* TEX. EDUC. CODE ANN. § 37.004 (Vernon Supp. 2002) (*amended by* Act of May 27, 2001, 77th Leg., R.S., ch. 1225, § 1, 2001 Tex. Sess. Law Serv. 2654, 2654, *and* Act of May 17, 2001, 77th Leg., R.S., ch. 767, § 6, 2001 Tex. Sess. Law Serv. 1418, 1419).

You ask fourth whether a school district is obligated to fund the building of JJAEP facilities. It is not. Nothing in the statute requires a school district to fund construction of JJAEP facilities. The statute permits a school district to provide a facility it owns for the JJAEP, but the statute does not require it to do so. *See* TEX. EDUC. CODE ANN. § 37.011(e) (Vernon Supp. 2002). Additionally, the school district must pay the juvenile board a certain sum for students who are placed in the JJAEP following a discretionary expulsion. *See id.* § 37.011(k)(2). The statute does not indicate whether a school district may agree to make additional payments for the costs of constructing a new facility.

You ask finally whether a juvenile board may purchase real estate or accept donations of real estate to be used as a facility for the JJAEP. The board has only those powers that it has been expressly given by law, as well as those that may be implied from the express delegation. *See* Tex. Att'y Gen. LO-93-007, at 1.

We conclude that a juvenile board may purchase real estate for JJAEP purposes. A juvenile board may enter a contract without commissioners court approval. *See* Tex. Att'y Gen. Op. No. JC-0209 (2000) at 2. Additionally, a juvenile board may determine how to expend its funds, with limited commissioners court review. *See id.* at 3. *But see id.* at 4 (stating that juvenile board must expend funds according to its budget unless budget is amended). A juvenile board in a county with a population greater than 125,000 must operate a JJAEP, presumably in a facility. No one is *required* by statute to provide the facility, although a school district *may* provide a facility. *See* TEX. EDUC. CODE ANN. § 37.011(a), (e) (Vernon Supp. 2002). We deduce that the juvenile board thus has implied authority to purchase and own real estate for the purpose of providing a JJAEP facility.

But we also conclude that the Denton County Juvenile Board may not accept contributed real estate for JJAEP purposes. An agency may not accept a donation unless it is authorized by law to do so. *See* Tex. Att'y Gen. Op. Nos. JM-1019 (1989) at 4, JM-684 (1987) at 2; *see also* Tex. Att'y Gen. LO-97-032, at 1. Nothing authorizes the Denton County Juvenile Board to accept donations. *See* TEX. HUM. RES. CODE ANN. ch. 152, subch. A (Vernon 2001 & Supp. 2002); *id.* § 152.0671 (Vernon 2001). By contrast, section 152.0037 of the Human Resources Code, which applies to some juvenile boards other than the Denton County Juvenile Board, *see id.* § 152.0031 (Vernon 2001), expressly authorizes a board to accept "grants or gifts from other political subdivisions of the state or associations for the sole purpose of financing adequate and effective probation programs." *Id.* § 152.0037(a). Thus, the legislature has authorized certain juvenile boards to accept a contribution for certain purposes, but it has not authorized the Denton County Juvenile Board to do so for JJAEP purposes.

---

[2](...continued)
Cornyn, Texas Attorney General (Oct. 4, 2001) (on file with Opinion Committee).

## S U M M A R Y

Outside of its responsibility to provide some funding to the juvenile board and to review that portion of the juvenile board's budget funded with county monies, a county or a commissioners court is not statutorily responsible for any aspect of the development or operation of a juvenile justice alternative education program (JJAEP). Because the juvenile board receives some county funds, the county may have corresponding obligations or liabilities.

A county has no authority to determine which expulsions that are discretionary under section 37.007 of the Education Code will be subject to placement in the JJAEP. *See* TEX. EDUC. CODE ANN. § 37.007(b), (c), (e), (f) (Vernon Supp. 2002). A school district's authority to determine which discretionary expulsions will be subject to placement in a JJAEP stems from its duty to negotiate with the juvenile board an annual memorandum of understanding. *See id.* § 37.011(k), (*l*). Conversely, the juvenile board's authority to determine which categories of conduct will be subject to placement in the JJAEP is subject to negotiation with the school district. The eligibility criteria set in the memorandum of understanding may be based upon classifications of conduct only.

A school district is not obligated to fund the construction of JJAEP facilities.

A juvenile board may purchase real estate for JJAEP purposes, but a juvenile board may not accept contributed real estate for JJAEP purposes unless the legislature has expressly authorized it to do so.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee